# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

VALORIE WILLITS,

                Plaintiff,

v.                                        Case No. 6:15-cv-01080-JTM

CAROLYN W. COLVIN,
Acting Commissioner Of Social Security,

                Defendant.

## MEMORANDUM AND ORDER

Plaintiff Valorie Willits appeals a final decision of the Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act. The Commissioner found that plaintiff was not disabled because she retained the ability to perform her past relevant work as a bookkeeper and accounting clerk. After reviewing the record and the relevant law, the court concludes that the Commissioner's decision should be affirmed.

### I. Factual and Procedural Background

On June 7, 2012, plaintiff protectively filed an application for disability insurance benefits, alleging a disability beginning November 24, 2008, when she was 44 years old. In November 2008, plaintiff was diagnosed with breast cancer. She underwent surgery, followed by chemotherapy and radiation. In July 2009, plaintiff began taking Tamoxifen but experienced some trouble with its side effects. Diagnostic testing at that point showed no recurrence of the prior malignancy. Plaintiff also underwent treatment for

lymphedema (swelling) in her right arm. Plaintiff subsequently required surgery for an anal fissure, and preparatory testing for that procedure revealed a heart condition. Plaintiff began taking cardiac medication at that point, which improved her heart function enough to permit the aforementioned surgery. Subsequent to the date plaintiff was last insured for disability benefits,[1] her heart condition worsened and she had a defibrillator implanted.

After plaintiff's claim was denied initially and upon reconsideration, she requested a hearing before an Administrative Law Judge (ALJ). On May 9, 2013, plaintiff and her attorney appeared for an evidentiary hearing conducted by ALJ Rhonda Greenberg in Wichita, Kansas. Plaintiff testified at the hearing, as did vocational expert (VE) Steve L. Benjamin.

On July 12, 2013, the ALJ issued a written opinion denying plaintiff's application. Dkt. 9-3 at 26. Applying the five-step sequential analysis set forth in the regulations, the ALJ first found that plaintiff had not engaged in any substantial gainful activity from the alleged onset of her disability through the date she was last insured under the Act. Next, the ALJ found that plaintiff suffered from two severe impairments: right breast cancer and congestive heart failure/cardiomyopathy. The ALJ concluded that plaintiff's impairments did not meet or medically equal the severity of any impairment listed in the regulations.

---

[1]  Based on plaintiff's earnings history, the ALJ found that plaintiff had worked enough quarters to remain insured under the Act through December 31, 2010.

The ALJ next assessed plaintiff's residual functional capacity (RFC). The ALJ found that plaintiff had the capacity to perform less than the full range of sedentary work in that she could occasionally climb ramps, stairs, ladders, ropes and scaffolding; occasionally balance, stoop, kneel, crouch and crawl; occasionally be exposed to extreme temperatures; occasionally reach overhead; frequently handle and finger with the right arm; withstand occasional vibration; and be absent from work one to two days a month.

At step four of the analysis the ALJ found, based on the testimony of the vocational expert, that a person with plaintiff's RFC could perform plaintiff's past jobs as a bookkeeper and accounting clerk, both of which qualified as sedentary work. Because the ALJ found that plaintiff could perform these jobs, she found plaintiff was not disabled within the meaning of the Act without proceeding to step five to determine whether there were other jobs in the national economy that plaintiff could perform.

Plaintiff contends the ALJ's finding at step four was not supported by substantial evidence. Dkt. 10 at 7. She first contends the RFC was vague as to work absences (it found plaintiff would need to be absent "one to two days a month") because it did not state whether plaintiff would miss work at the maximum of the range (two days) or the minimum of the range (one day) per month. Plaintiff argues a specific finding was required because the vocational expert indicated that a person would not be able to keep his or her job if he or she continually missed two days of work per month. Dkt. 9-3 at 64.  Second, plaintiff argues the ALJ erred by failing to find the RFC limitations in a function-by function manner (e.g., her ability to sit, stand, or walk for specific periods of

time), finding instead that plaintiff could do "sedentary work" with certain limitations. Plaintiff argues the regulations require specific findings and that the ALJ's failure to make those findings requires a remand.

## II. Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (*citing Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to

perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *3 (*citing Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).  The steps are designed to be followed in order.  If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4-5 (*citing Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from [her] impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5 (*citing Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a disability that prevents performance of her past relevant work. *Lax*, 489 F.3d at 1084. The burden then shifts to the Commissioner at step five to show that, despite her alleged impairments, the claimant can perform other work in the national economy. *Id.*

### III. Analysis

A. <u>Need for absences.</u>  Plaintiff first contends the ALJ's finding that plaintiff had a need to be absent from work "for one to two days a month" is vague and requires a remand to clarify whether this meant that plaintiff would consistently miss two days of work per month. See Dkt. 10 at 10. The vocational expert testified that employers will tolerate absences of one to two days a month but that a person who was "continually off for two days a month over and over and over" would be "pushing the maximums and wouldn't be able to keep their job." Dkt. 9-3 at 64.

The court rejects this argument as an attempt to inject ambiguity where none exists. The ALJ's finding clearly indicates that plaintiff would need to miss work for varying periods of from one to two days per month. That factual finding is, as the Commissioner argues, incompatible with a suggestion that the ALJ actually meant to say or find that plaintiff would need to be absent on a continuing basis for two days per

month. The finding does not require a remand for clarification. *Cf.* Dkt. 10 at 11 ("The problem is that the ALJ did not make it sufficiently clear how many days of work Willits would miss."). Moreover, given the vocational expert's testimony that plaintiff could perform her past work within a limitation of missing one to two days of work per month, the finding clearly supported the ALJ's determination that plaintiff was not disabled. Plaintiff has shown no basis for a remand.

B. <u>Manner of stating the RFC</u>. Plaintiff also argues a remand is required because the ALJ failed to determine plaintiff's RFC in a function-by-function manner as contemplated by the regulations. Specifically, plaintiff asserts that the ALJ "never made specific findings regarding Willits's ability to stand or sit." Dkt. 10 at 13.

As plaintiff points out, the regulations generally require an ALJ to make individualized findings concerning a claimant's functional limitations. Social Security Ruling 96-8p provides in part that the RFC assessment "is a function-by-function assessment based upon all the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184 (July 2, 1996). As discussed in *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014), SSR 96-8p directs that at step 4 of the sequential process, "the RFC must not be expressed in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it." *Hendron*, 767 F.3d at 956. The RFC may be expressed in terms of exertional category if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national

economy. The rule cautions that an initial failure to consider an individual's ability to perform the specific work-related functions "could be critical to the outcome of a case," in part because an ALJ "may … overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." *Id*. at 956 (citing SSR 96-8p, 1996 WL 374184, *3).

In this case, the ALJ first set forth a narrative review of the evidence in her discussion of the RFC. Among other things, the ALJ found that plaintiff's activities of daily living were not significantly limited; that plaintiff and her husband share household chores; that plaintiff does light housekeeping including sweeping and laundry; she prepares two dinners a week, does the dishes, shops twice a month, uses the computer 30 minutes at a time, reads one hour a day, and watches 8 to 10 hours of television a day. According to the ALJ's findings, plaintiff works out at the YMCA, she crochets two hours a day, she is able to drive, shop, and handle finances; she cares for her pets when necessary; she belongs to a crochet club, converses on the phone regularly, and goes into the community to eat at restaurants and to shop. Dkt. 9-3 at 32.

The ALJ also discussed the medical evidence and noted that no doctor who has treated or examined plaintiff has stated or implied that she is disabled. The ALJ gave "significant weight" to the opinions of two State agency medical consultants (Drs. Griffith and Hauscher) both of whom addressed plaintiff's various limitations (including her ability to sit and stand) and concluded that plaintiff was limited to a reduced range of *light* work. Dkt. 9-3 at 32. The ALJ found these doctors' assessments were "generally consistent with a review of all the evidence," although she disagreed

8

with their findings that plaintiff was unable to crawl, and the ALJ ultimately concluded that "the evidence reflects limitations to sedentary activities with postural and environmental limitations as outlined by the medical consultants." Dkt. 9-3 at 33. Both of the medical consultants cited by the ALJ opined that plaintiff's exertional limitations included the ability to sit for six hours of an eight-hour day (with normal breaks), to stand and/or walk for six hours of an eight-hour day, and to frequently lift ten pounds. Dkt. 9-4 at 9-11, 23-24. These exertional limitations are consistent with the requirements of sedentary work. *See* SSR 96-9p, 1996 WL 374185, *6 (July 2, 1996).

Although the ALJ thus did not make explicit findings concerning plaintiff's ability to sit, stand and walk, she implicitly adopted the exertional limitations found by the two medical consultants. The ALJ was clearly doing so in finding that plaintiff had the RFC "to perform a less than full range of sedentary work as defined in 20 CFR 404.1567(a) in that the claimant" had the postural, environmental, and manipulative limitations indicated by one or both of the consulting physicians, as well as a limitation for a need to be absent one to two days a month.  The ALJ's hypothetical questions to the vocational expert effectively incorporated these limitations, and the expert opined that plaintiff could still perform her prior jobs as an office manager and bookkeeper. Dkt. 9-3 at 63-64.

Although the court agrees that the ALJ should have made explicit her findings concerning plaintiff's ability to sit, stand and walk, as plaintiff argues, the record shows that the ALJ nevertheless implicitly made those findings by reference to the opinions of the two State agency consulting doctors.  As in *Hendron v. Colvin*, 767 F.3d 951, 957 (10th

Cir. 2014), "the ALJ's failure to find explicitly that [plaintiff] was capable of sitting for six hours during a regular eight-hour workday was not critical to the outcome of this case, and [plaintiff] has not demonstrated error." Under the circumstances, the ALJ's findings were sufficient to show her conclusion, her reasoning, and the legal standards she applied. *See Id.* (*citing Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (in such circumstances "merely technical omissions in the ALJ's reasoning do not dictate reversal."). As such, the ALJ's findings will be affirmed because they were supported by substantial evidence and the correct legal standards were applied.

**IT IS THEREFORE ORDERED** this 14th day of January, 2016, that the final decision of the Commissioner denying plaintiff's application for disability insurance benefits is AFFIRMED.

_____ s/ J. Thomas Marten__
J. THOMAS MARTEN, JUDGE